UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | |
| BRITTANY MELANSON, * | |
| Plaintiff, * | |
| Against * | **COMPLAINT** **DOCKET NO.** |
| CREDIT ADJUSTMENTS, INC. * | **JURY TRIAL DEMANDED** |
| Defendant. * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the plaintiff, BRITTANY MELANSON, seeks relief for the defendant's violation of BRITTANY MELANSON'S rights secured by the Pregnancy Discrimination Act of 1978 (PDA), Title VII of the Civil Acts of 1964, as amended, for employment discrimination based upon pregnancy discrimination. The plaintiff seeks damages, both compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorneys' fees, and all other damages available under the law as this Court deems just and equitable.

**JURISDICTION**

2. Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e(5) as well as U.S.C. §§ 1331, 1343 and 42 U.S.C. § 1981, et seq.

**JURY TRIAL DEMANDED**

3. Plaintiff demands a trial by jury on each of the causes of action pleaded herein.

## VENUE

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## PROCEDURAL HISTORY – EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On July 8, 2019, the New Hampshire Commission for Human Rights found probable cause that the Defendant failed to accommodate Plaintiff's pregnancy and retaliated against Plaintiff because of her pregnancy.

6. On September 3, 2019, after this finding of probable cause and retaining counsel, Plaintiff requested a "right to sue" letter from the EEOC.

7. The EEOC issued a Right to Sue letter on October 21, 2019.

## PARTIES

8. The plaintiff, BRITTANY MELANSON, is a resident of Elliot, Maine.

9. At all times relevant, BRITTANY MELANSON, was pregnant and therefore a "qualified individual" subject to the protection set forth in the, Pregnancy Discrimination Act of 1978 (PDA), Title VII of the Civil Acts of 1964, as amended, which prohibits employment discrimination based upon pregnancy discrimination, disability (under the ADA and Rehabilitation Act).

10. The defendant, CREDIT ADJUSTMENTS, INC. ("CAI") is a full-service collection agency specializing in healthcare and high education accounts that employs more than 300 people and promotes itself as a "faith-based employer." CAI is headquartered at 330 Florence Street, Defiance, Ohio and has additional offices at 1806 Madison Avenue and 1946 N. 13th Street, Toledo, Ohio as well as 228 Maple Street, Floor 2, Manchester, New Hampshire.

**Facts**

**Pregnancy Discrimination**

11. On May 2, 2016, Brittany Melanson was hired, along with seven other trainees, as a debt collector for Defendant Credit Adjustments, Inc. ("CAI") at the company's Manchester, New Hampshire, location.

12. Later that month, Brittany told her trainer, Mathew Cooper, she was pregnant.

13. Sadly, it appeared that Brittany was likely to lose her unborn child and she sought specialized doctors to prevent this tragedy.

14. In June, Brittany informed CAI's Manchester Director of Operations, Michelle McNeil, and Corporate Human Resources Director, Amy Bains, that she was having medical issues related to her pregnancy and would need to, occasionally, leave or miss work as she needed specialized treatment from a doctor more than an hour's drive from Brittany's workplace and home.

15. McNeil instructed Brittany to email on any such occasion and the time needed would be given.

16. Brittany offered, in addition to the emails, to provide notes from her doctors or complete ADA accommodation paperwork but was told such documentation was unnecessary.

17. Because of her pregnancy, and for pregnancy related medical issues or doctor's appointments, Brittany was absent from work six (6) days, total, in June and July of 2016.

**Sexual Harassment Complaints**

18. On May 26, 2016, Plaintiff sent an email message to Michelle McNeil reporting inappropriate touching by a male co-worker, Craig Bloomberg.

19. Despite written corporate policies stating that all such complaints would be promptly and thoroughly investigated, the record developed during the Human Rights Commission investigation shows that CAI did not undertake any investigation.

20. On July 7, 2016, Brittany informed her manager, Wayne Perra, that she was being subjected to a hostile work environment by her direct supervisor, Matt Hiltz.

21. On July 20, 2016, Brittany shared her concerns about Hiltz with Amy Bains and Michelle McNeil writing, "on July 7th I was scheduled 11:00am-9:00pm; unfortunately i (sic) was forced to leave early due to the harassment situation that has been on going with Matthew Hiltz. I would like to speak with someone in regard to the missed pay and being compensated for the missed time due to the conduct which unreasonably interfered with my work performance."

**The Pretextual Termination**

22. On July 26, 2016, CAI, through McNeil and Wayne Perra, Brittany's manager, terminated Brittany's employment; writing in her termination notice that "attendance drives production and quality of work and yours has been unacceptable within your first 90 days."

23. At that termination meeting, Brittany reminded McNeil of her pregnancy, the earlier conversation with McNeil and Bains about needing time to see her doctors and, again, offered to provide doctor's notes for the days she was absent.

24. McNeil did not respond to these facts, but, instead told Brittany that two customers had complained about her.

25. Company policy required counseling and retraining after any complaint, yet Brittany had never been retrained, or even notified before her termination about any customer complaints.

26. To the contrary, she had been told by her supervisor, Matt Hiltz, on or about June 16, 2016, that she was ranked third amongst her class of hires and her performance was not a concern.

27. As the Human Rights Investigation revealed, Brittany's similarly situated co-workers, the six other females in her training class who were not pregnant and who did not report concerns about harassment, were treated more favorably.

28. Analyzing four similarly situated employees who had more absences than Brittany's absences before she became pregnant, the Commission Investigator found that a male employee with more incidences of tardiness, more incidences of returning late from lunch and three more absences was not terminated. Other employees with absences equal to Brittany's were not terminated. Further, absences that were excused for training as well as the July 7, 2016 episode that was part of the hostile work environment described above at paragraph 21, were counted against Brittany.

29. Rather than allowing an employee to take needed time to meet with doctors for pregnancy related medical conditions or address concerns about sexual harassment and a hostile work environment, CAI fired Brittany Melanson using her pregnancy related absences as a pretext.

**COUNT I**
**Violation of Title VII – Pregnancy Discrimination**
**Disparate Impact and Disparate Treatment and Retaliation**

30. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

31. The Pregnancy Discrimination Act of Title VII prohibits discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Further, the statute makes it unlawful for an employer to "discharge any individual ... because of such individual's ... sex," 42 U.S.C. § 2000e–2(a)(2), defining "because of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions," *id.* § 2000e(k).

32. The Plaintiff, as a pregnant woman, was a member of a class protected under Title VII.

33. The Defendant had knowledge of Plaintiff's pregnancy and her pregnancy related medical condition.

34. Plaintiff was terminated, an adverse employment action.

35. Defendant's purported reasons for terminating Plaintiff's employment are a pretext for pregnancy discrimination.

36. Further, Plaintiff was terminated in retaliation for exercising her rights under Title VII.

37. Plaintiff was qualified to do her job.

38. Plaintiff was treated less favorably than similarly situated co-workers who did not belong to her protected class.

39. The discrimination described herein has caused past, present and future pain and suffering, loss of enjoyment of life, loss of employment opportunities, loss of income as well as attorney's fees and costs.


WHEREFORE, the plaintiff demands the following relief:

A. A trial by jury;

B. Find that Defendant violated the Pregnancy Discrimination Act;

B. An award of compensatory damages;

C. An award of punitive damages;

D. An award of enhanced compensatory damages;

E. An award all other damages available under law including, but not limited to, back pay, front pay, lost employment benefits, emotional distress, humiliation, and loss of enjoyment of life;

F. An award of costs, interest and attorney's fees; and

G. Such other and further relief as this Court may deem appropriate and equitable.

Dated: January 15, 2020
Manchester, New Hampshire

*/s/ Kirk C. Simoneau*

Kirk C. Simoneau, Esq. (NH Bar# 19291)
Nixon, Vogelman, Slawsky & Simoneau, P.A.
77 Central Street
Manchester, NH 03101
(603) 669-7070
ksimoneau@davenixonlaw.com

Attorneys for Plaintiff.